UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMED A. JAMA | ) | |
| 3045 Azure Cove | ) | |
| Aurora, IL 60503 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA No. _____ |
| | ) | |
| RICHARD V. SPENCER | ) | |
| Secretary of the Navy | ) | |
| 720 Kennan Street SE, | ) | |
| Washington Navy Yard, DC 20374-5013 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

This is a non-monetary claim to set aside the decision of the Board for Correction of Naval Records [BCNR]  Docket # 234-14 (Sept.23, 2014), that denied plaintiff's reconsideration from 2010  (#546-10) and to void his July 25, 2008 discharge for alcohol rehabilitation failure at 19 ½ years and grant a 20-year retirement.  Plaintiff seeks to remand the case to the BCNR.

The 2014 BCNR decision failed to mention and discuss his new evidence and arguments that were unavailable and not considered by the 2010 BCNR.  This included VA ratings for Navy-untreated contributory depression, and two analogous BCNR cases citing the importance of undiagnosed depression as mitigation.  Instead the 2014 BCNR denial offered a cursory statement "[this] was insufficient to establish material error or injustice."  The agency failure to reasonably articulate its rationale, let alone mention or distinguish two analogous BCNR cases, was arbitrary and capricious agency action.  The Court should remand this case for reconsideration.

## JURISDICTION AND VENUE

Jurisdiction is conferred under the Administrative Procedure Act, U.S.C. § 702.

Venue is proper as the Defendant is found in this District.

PARTIES

Plaintiff, Mohamed A. Jam, is a former petty officer in the Navy, grade E-6.

Defendant, Richard V. Spencer, in his capacity, is the Acting Secretary of the Navy.

FACTS

1.   On 17 January 1989 Mr. Jam enlisted in the Navy Reserve.  He later entered active duty on 7 February 1989, beginning his 19 years of regular service.

2.   In May 2005, after being diagnosed as alcohol dependent, Jam self-referred into a detox Level III Substance Abuse Rehabilitation Program (SHARP).  Ex. J at 15.[1]  He successfully completed this 3 week inpatient portion of treatment on 17 June 2005.  Ex. F 1 (noting "completed Level III on 17 June 2005").   By June 2006, he successfully completed the 12 month after-care program by maintaining sobriety.  Ex. J at 15.

3.   *Relapse in August 2006.*  On 14 August 2006 while off duty, civilian police found Mr. Jam  publicly intoxicated.  He was not arrested.  As a "courtesy turnover," he was transferred by the police to Navy authorities.  Ex. J at 17; and Ex. F at 1.

4.   He began this SHARP with a screening in October 2006 by SHARP counselor  "Dido Galleon."  Ex. D 1 ¶ 1.   He was again diagnosed as alcohol dependent.  Ex. D 1 ¶ 2.  Because of his prior 2005 treatment, the SHARP official recommended the commanding officer find him a "treatment failure."  Ex. D 1 ¶ 3.   Instead, the SHARP official merely recommended a "Continuing After-Care Plan" of 90 meetings, random Breathalyzer, with follow-up.  Ex. D at 1 ¶ 2.  This 12 months was to last through October 2007.  Ex.  D  2.

5.   The commander apparently did not agree Mr. Jam was a treatment failure requiring a waiver to stay in the Navy.  Moreover, absent related misconduct, the term "treatment failure" is left to the commanding officer, not by a SHARP official.  OPNAVINST 5350.4C, Encl (1) at ¶

---

[1] For convenient reference, plaintiff refers to the exhibits as labeled before the 2014 BCNR.

7a(3).  There is no record of a waiver obtained from NAVPERSCOM.   Instead, on 21 September

2006 Jama was issued a Page 13 Letter of Counseling/Warning.  Ex. F at 2.   In October 2006 he

was again entered into the continuing SHARP aftercare program.

      6.   It is debatable that the August 2006 off-duty, onetime relapse with a police "courtesy

turnover" qualified under OPNAVINST 5350.4C as an alcohol-related incident— there was no

arrest, and was not the subject of UCMJ punishment or civilian authorities.  Encl (4) at page 3.

      7  A relapse is simply a return to drinking.  Relapse alone is not considered a return to

"alcohol abuse" within the meaning of the Instruction.   Encl (4) at 2 (use of alcohol to the extent

that "it leads to act of alcohol-related misconduct").   The Instruction distinguishes treatment

failures or abuse *from* a relapse; the latter a part of the disease process—

> Addiction and alcoholism (alcohol dependence) are considered diseases of relapse....a
> relapse is a return to drinking....sometimes a relapse can be therapeutic if it reinforces...that
> they really do have a problem and strengthens their commitment to a recovery program.

Encl (4) at 11.

      8.    The 2006 command action, in effect, did not constitute treatment failure warranting a

waiver, but a relapse.  Ex. H (8 Nov 2007 letter from LCDR Lewis "relapsed in 2006").    There

was no arrest, no disciplinary action, or adverse comments in a performance evaluation.  A waiver

does not apply for a relapse without documented alcohol-related misconduct.  The command agreed

with the SHARP official for the tailored 12-month aftercare.  Ex. D 1 ¶ 3.  There is also no record

of a waiver to extend service; only the routine Page 13.  But see Ex. H (8 Nov 2007 letter from

LCDR Lewis stating "relapsed in 2006 and granted a waiver and put under a strict aftercare plan.").

Yet,   no record exists of a NAVPERSCOM waiver.  This confused Page 13 with a waiver.


*Summer of 2007: untreated undiagnosed clinical depression was obstacle to recovery*.

      9.  Beginning mid-2007, Mr. Jam experienced onset of clinical depression.   From marital

separation, ongoing anxiety of potential failure in the 12 months aftercare, with concomitant career

end. Ex. C 1-2 (3 Dec 07 mental health entries "depressed for past six months, decreased energy,

decreased motivation, insomnia (initiating and maintaining), poor appetite; losing 10-15 pounds").

10.   BUMEDINST 5353.4 (Standards for Substance Related Disorder Treatment).  The Navy underscores that an obstacle to treatment and recovery is the risk from ongoing psychiatric illnesses, such as anxiety and depression—

[¶ 1c] Emotional and Behavioral Conditions or Complications.
Patients with substance use problems...often present varying degrees of emotional and behavioral difficulties....such as anxiety and depression, are frequently situational and are resolved with minimal intervention. However, in other cases *the degree of instability associated with these states may present immediate risks or obstacles to treatment and recovery.* The more severe the emotional or behavioral problems are, the more intense the level of intervention. If the emotional problems are so severe as to preclude the patient's ability to work on substances abuse issues, referral to other mental health services may be required. ... * * * Consider the following questions:

(1) Are there current psychiatric illnesses or psychological, behavioral, or emotional problems that need to be addressed or which complicate treatment?

(2) Are there chronic conditions that affect treatment?

Ex. M at 4 (Encl (4),  BUMEDINST 5353.4)[emphasis added].

11.   The mid-2007 depression clearly met the criteria under the standard psychiatric diagnostic manual DSM-IV.   The essential feature is depressed mood plus at least 4 of 8 other symptoms, such as (1) changes in appetite or significant weight loss, (2) insomnia, (3) fatigue or decreased energy, (4) loss of motivation or interest in pleasure or enjoyment, (5) sense of worthlessness or self-blame, (6) poor concentration, (7) psychomotor agitation, or (8) suicidal thoughts.  Ex. N 1, 6.

12.   There are lesser diagnoses for depressed mood that do not meet 1+4 criteria (with lower level of impairment or severity).  These are first Depressive Disorder Not Otherwise Specified, then Adjustment Disorder with Depressed Mood (generally lasting no more than 6 months).  Ex. N 5.

13.   Finally in December 2007 Mr. Jam started medication trials of 3 antidepressants normally associated with Major Depression–Celexa [citalopram], Effexor [venlafaxine], and Trazodone (the latter also serves dual function as antidepressant/sleep aid).  Ex. C 1 (citalopram; trazodone on 3 Dec 07); Ex. C 5-6  (citalopram; venlafaxine, trazodone on 21 Dec 2007).  By May-June 2008 Jam replaced Celexa for Effexor, maintaining Trazodone. Ex. C. 7-8.

14.   These medical records show normal dosages were prescribed for treatment of major depression.  20 mg for Celexa.[2]   And 75 mg Effexor XR.[3].   And 100 mg for Trazodone.[4]

15.   However, Jam was *not diagnosed* from December 2007 through discharge in June 2008 with any psychiatric disorder of depression.  Instead he was found to have career-stigmatizing personality disorder under the pejorative label Adjustment Disorder.  Ex. C 1-9.  This illustrates, even at this belated juncture, a depression diagnosis was not taken seriously.

Returned to alcohol abuse on 24 Sept 2007– drunk on duty.

16.   Although depression onset was mid-2007, Mr. Jam as noted above did not get psychiatric treatment until 3 December 2007.  This proved too little too late.  On 23 September 2007 he returned to drinking, appearing drunk for duty.  Ex. G at 1-2 (16 Oct 2007 Investigative Report). It is noteworthy that the report's "matters in mitigation" found that Mr. Jam

> was making honest attempts to combat his alcoholism [but] he did not have the stress skills coping skills when presented with family problems...he is seeking professional personal and marriage counseling at this time.

Ex. G 2 [emphasis added].

17.   Marital counseling was not enough.  Proper treatment in Jam's case— with up to 3 antidepressants— came too late.   Once he received proper treatment for his depression, he miraculously *had no further relapses and no  incidents–despite acute stress.*  There are no further records showing alcohol abuse.  Ex. J at 12 ¶ 2d (22 Feb 08 Letter of Deficiency; "built a stable recovery program"); Ex. J 13-A at ¶ 1 (physician ADB testimony; abstained from alcohol since 3 Dec 07).

---

[2] Celexa 20 mg is for "treatment of major depression."  http://en.wikipedia.org/wiki/Citalopram.

[3] Effexor Extended Release (XR) is for Major Depressive Disorder; starting dose is 75 mg/day. http://www.rxlist.com/effexor-xr-drug/indications-dosage.htm

[4] An antidepressant of the serotonin antagonist and reuptake inhibitor (SARI) class; also has anti-anxiety and sleep-inducing effects.    http://en.wikipedia.org/wiki/Trazodone.

18.   Moreover, the glaring symptoms of major depression reported on 3 December, did not suddenly materialize overnight.  Rather, the mental health practitioner, by immediately prescribing two antidepressants and sleep aid, implicitly confirmed chronic depression -- had already lost 10-15 pounds, exhibited no energy, motivation, with long term clinical insomnia (both initiating and maintaining sleep).  But without psychiatric early intervention,, amid his unstable emotional and behavioral state, the risk to recovery would prove insurmountable.

19.   On 30 October 2007, after drinking the night before, Mr. Jam failed to timely report for duty.  Instead he went to the nearest Emergency Room for detox.  He was still not given any psychiatric examination, but began another Level III detox program.  Ex. H (SHARP letter 8 Nov 07); Ex. I at 1 (6 Dec 07 NJP proceedings).

20.   On 31 November 2007, Mr. Jam was released from the Level II inpatient status.  Three days later, on 3 December 2007 at 0800 hours— instead of reporting for duty— he went straight to sick call requesting again - a mental health exam.  Entries show at 0830 he was finally evaluated.  Ex. C 2.  As fully set forth earlier, Jam was finally prescribed antidepressants, and sleep aid.  But misdiagnosed with a personality defect of Adjustment Disorder.  Ex. C.  This medical insult of an underlying character flaw, sealed his fate as an irredeemable alcoholic.  Yet despite an otherwise successful 19 year military career– the Navy suddenly found an underlying personality defect.  Something 'was rotten in Denmark,' as character defects are not treated with antidepressants.

21.   Adding insult to injury, Mr Jam was given non-judicial punishment [NJP] on 6 December 2007 failing to timely report for duty on 3 December — the same time he was seeking psychiatric treatment.[5]  He was also charged with prior offenses of 24 September (drunk on duty), and not timely reporting for duty 30 October 2007 (at the ER and transferred to detox).   Ex. I at 1.

22.   He pled not guilty to the offenses of failing to report for duty on 30 October and 3 December.  He pled guilty to the being drunk on duty on 24 Sept.  On 20 December 2007, he was found guilty of all three offenses. Ex. I at 1; Ex. A at 2.

---

[5] Non-judicial punishment, 10 U.S.C. § 815.

6

23.   On 7 January 2008, he was notified that administrative discharge procedures were initiated for alcohol rehabilitation failure.

24.   On 27 February 2008, his case was heard by an administrative discharge board (ADB). The ADB recommended separation for alcohol rehabilitation failure. Ex. J.   Defense counsel submitted a Letter of Deficiency, argued for a suspended discharge for 12 months.

25.   On 14 March, the commander added his recommendation for discharge.  Ex. J 14.

26.   On 12 May, the superior discharge authority directed discharge. Ex. K 1.

27.   In the interim on 1 July, factual errors were noted in the commanding officer's recommendation.  The new commander found the errors harmless. Ex. J 16-18.  Discharge processing then continued.

28.   Mr. Jam was honorably discharged on 25 July 2008 for alcohol rehab failure. Ex. K 2.

29.    The Veteran Administration (VA) retroactive to 25 July 2008 granted Mr. Jam 30% rating for depression, based hospitalization.  The lazy task based on civilian provide in 2008 shortlyJohn after 2007 retirement. or permanent depression until lapse of 5 years from the rating of July 2008, or by July 2013.[6]

30.   In January 2010, Jama through civilian counsel Greg McCormick, and Gary Myeres.CNR to void his discharge and grant retirement.  Counsel argued the factual errors in the commander's recommendation were not harmless.

31.   In September 2010, the BCNR denied relief.

32.   In December 2010 the VA denied Mr. Jama's appealed of the VA 2008 decision. Although the VA denied higher ratings, on re-examination it did not decrease or terminate the rating.

---

[6] See 38 C.F.R. §§ 3.327 *Re-examination* (rating subject to decrease for improvement between 2-5 years); 38 C.F.R. § 3.344 *Stabilization* (procedures).

33.   From 2011 Mr. Jama worked overseas primarily in Saudi Arabia.  This was with a contractor in defense-related industry requiring security clearances.  This is because—still taking his antidepressants— he has maintained sobriety.

34.   By 25 July 2013, this diagnosed depression proved continuous from Navy service, stabilized or permanent psychiatric disability.  It follows the 2007 Navy misdiagnosed him with personality defect of a temporary Adjustment Disorder (may not exceed 6 months).

35.   On 1 August 2013 Mr. Jama through undersigned counsel, applied to the BCNR for reconsideration of the 2010 denial.


2010 BCNR factual mistakes of prior 2005 treatment failure; and October 2006 waiver.

36.   The BCNR in 2010 erroneously found Mr. Jama in October 2005 also was an "alcohol rehabilitative failure" after his June 2005 Level III treatment.  Further, the BCNR mistakenly concluded that the "command chose not to process you for discharge [in 2005]."  Ex. A 1-2.

37.   The BCNR error is understandable because of the 'year' error of 2005 on the October 2006 referral to SARP *after* the August 2006 public intoxication.  But a careful reading shows Jama in June 2005 successfully completed a Level III treatment, was sober 14 months.  He relapsed in August 2006.  So his command in September 2006 chose *then* not to process him for discharge.  Instead a Page 13 was issued.  And in October 2006 he enrolled in 12 month outpatient program.  Also contrary to the 2010 BCNR presumption, there is no waiver to extend service.

38.   The 2010 BCNR's factual mistakes prejudiced a full and fair adjudication— adding aggravating factors while subtracting mitigating factors:

   A.   It adversely portrayed Mr. Jama's as having an additional treatment failure in 2005.

   B.   And by the BCNR saying that in 2005 "your command chose not to process you for discharge" implies that he got special treatment by sidestepping discharge processing.

   C.   BCNR's incorrect "waiver" presumption implies portrays as Jama as unjustly getting another windfall despite 2 failures— 2005 and 2006.

   D.   Finally, this mistake discredits Jama's argument that 2006 was a relapse, not a failure mandating discharge.  He then cites two cases in support, analogous to his situation, below .

39.   The relevance of two prior BCNR misconduct discharge cases were cited in Mr. Jama';s application to BCNR.   In those cases, the show that  Board would find it significant if misconduct was related to untreated depression, insomnia, or nervous trouble of any sort —

(1).  BCNR Docket No. 02007-03 (29 August 2003).  Affirmed OTH separation for misconduct, based on 2 NJPs, and summary court-martial conviction.  The Board did not find "any indication in the available records that your misconduct was related to the effects of undiagnosed depression...."  This case was posted by the BCNR in 16 April 2010.[7]

(2).  BCNR Docket No: 2027-01 (11 June 2001).  Affirmed OTH separation for commission of a serious offense.   The Board found that results of a mental status examination– were within normal limits, and you were not found to be suffering from a psychiatric disorder....you [later] completed a Report of Medical History in connection with your pre-separation physical examination — "You... denied frequent *trouble sleeping, depression* or excessive worry, or nervous trouble of any sort [italics added]."    This case was first posted by the BCNR in April 2010.[8]

40.   An analogous case is Brownlee v. Army, (remand when correction board failed to address non-frivolous arguments)); relied on  Mori v. Dep't of Navy, 917 F.Supp. 2d 60, 64-65 (D.D.C)(when BCNR denied plaintiff a promotion special selection board (SSB), it failed to distinguish two similar cases applicant proffered; "text book agency action was arbitrary and capricious", citing  Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1089 (D.C.Cir.1986) ("[A]n agency's unjustifiably disparate treatment of two similarly situated parties works a violation of the arbitrary-and-capricious standard."))

41.   In Jama's case, he cited the two analogous BCNR misconduct discharge cases in his application.   As noted above, these raised non-frivolous arguments of disparate treatment in his case  — the other Boards found it significant if misconduct was related to untreated depression, insomnia, or nervous trouble of any sort .

---

[7] http://boards.law.af.mil/NAVY/BCNR/CY2003/02007-03.pdf 04/16/10

[8] http://boards.law.af.mil/NAVY/BCNR/CY2001/02027-01.pdf 04/16/10

42. The BCNR's failure to address these non-frivolous arguments fairly raised in these other cases, remaining even silent to even distinguish them, was arbitrary and capricious agency action.

41.    In 2019, plaintiff filed the present civil action seeking judicial review under the Administrative Procedure Act, of the BCNR decision denying relief as arbitrary and capricious agency action.[9]

## CAUSE OF ACTION

That the 2014 decision of the Board for Correction of Naval denying plaintiff relief, violated the Administrative Procedure Act as an arbitrary and capricious agency action.


## PRAYER FOR RELIEF

That this Honorable Court declare that the Board for Correction of Naval Records (BCNR) 2014 decision  # 234-14, denying relief to plaintiff, was arbitrary and capricious agency action.

That the Court order a remand of this case to the BCNR to reconsider its 2014 decision, with particularity addressing the two related BCNR cases listed in the complaint at ¶ 39 and arguments raised in those cases therein; and address together the entirety of plaintiff's original submission before the BCNR in 2014, the facts as plaintiff presents in this complaint, and if any, plaintiff's submission of new and relevant material not available in 2014.

That this Honorable Court grant attorney fees.

Respectfully Submitted,

John Wickham
DC Bar 454863
32975 Saint Moritz Drive
Evergreen, CO 80439
303 670-3825 fax: 303 670-1586
wickham1@wispertel.net

Counsel for Plaintiff Mohamed Jama

---

[9] Although filed well within the statute of limitations, undersigned counsel was delayed preparing and filing this action earlier due serious illness, onset in late 2017 requiring periodic hospitalizations in 2018, and lengthy stay in 2019. Counsel is recovered.